UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

---

EMILIO FUSCO,
    Petitioner,

    v.

FEDERAL BUREAU OF PRISONS;
HARLEY LAPPIN, in his official capacity
as Director of Federal Bureau of Prisons;
T.S. CRAIG, WARDEN, FCI RAYBROOK;
    Respondents,

Civ. No. _____
Crim.No. 3:03 30036 002

PETITION PURSUANT TO 28
U.S.C. § 2241; 1651;
2201; 1361.

05-10953 JLT

---

PETITIONER, EMILIO FUSCO'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION FOR INJUNCTIVE RELIEF

Petitioner, Emilio Fusco ("Fusco"), respectfully submits this Memorandum of Law in support of his motion, by Order to Show Cause, for injunctive relief pursuant to Fed.R.Civ.P. 65. By this motion, Fusco seeks to compel the Respondent's, the Federal Bureau of Prisons ("B.O.P."), Harley Lappin (The Director of the BOP), and T.S. Craig (Warden, FCI Raybrook) (hereinafter referred to as "Defendant's")--to immediately make a determination as to his eligibility for pre-release designation to a Community Correctional Center ("CCC"), more commonly referred to as "halfway house", pursuant to the BOP's pre-December 20, 2002 rules, regulations, policies, practices, procedures, and criteria. The defendant's have failed and refused in their duty to perform this exercise, upon the grounds that the new policy, which was

---

1/
    The petitioner attaches the latest computation sheet from the BOP, which details the BOP's projected eligibility date for CCC placement. Essentially, the BOP is limiting Fusco to the 10% date solely and did not consider the 6 month allowable CCC placement date, pre-December 20, 2002 Policy.

effective as of December 20, 2002 ("the New Policy"), strips them of their lawful authority to do so.

Via a Memorandum from Respondent-Defendant Emilio Fusco dated December 20, 2002, the BOP advised that all inmates at FCI Raybrook, including Fusco, that as of December 20, 2002, and contrary to its prior practice, pre-release designations to CCC's would be <u>limited only to the last 10% of an inmates prison term</u>, not to exceed six months ("the 10% Rule"). This abrupt change in policy was ostensibly the result of an effort on the part of the BOP to comply with a December 20, 2002 Memorandum Opinion from the Department of Justice's Legal Counsel which concluded that certain BOP practices regarding CCC placement (including the practice of allowing all inmates to be eligible to serve their last six months of their sentence, regardless of the length thereof, in a CCC were unlawful) The BOP's New Policy regarding CCC designations---and the new 10% Rule in particular---is being applied retroactively to Smith, who although a parole violator, began serving his initial sentence in June, 1997, more than 7 years before the new policy went into effect.

Fusco now seeks emergency injunctive relief on multiple grounds, including claims predicated upon violations of the Administrative Procedure Act and the <u>Ex Post Facto</u> Clause of the United States Constitution. The specific relief he seeks is an Order compelling the defendants to disregard the new 10% Rule in his case and to immediately make a determination as to his eligibility for pre-release designation to a CCC pursuant to

the BOP's pre-December, 2002 rules, regulations, policies, procedures, and criteria.

## STATEMENT OF FACTS

The relevant facts and evidentiary basis for this motion are set forth in Fusco's Complaint and Petition, and in the accompanying Declaration of Fusco.

## ARGUMENT

### POINT I

THE SENTENCING COURT IS THE APPROPRIATE FORUM AND THE INJUNCTIVE RELIEF IS THE APPROPRIATE REMEDY FOR FUSCO'S CLAIM.

Since December 20, 2002, numerous defendants have challenged the BOP's New Policy on a number of grounds and pursuant to a variety of procedural devices. Most of those challenges have been brought by defendants who received judicial recommendations that they immediately be designated to, and therefore serve their entirety of their sentences in CCC's. Fusco's circumstances differ somewhat, in that his initial designation is not being challenged. Rather, what is being challenged in the instant case is that part of the New Policy concerning the 10% Rule--that is, the BOP's new refusal to consider Fusco's eligibility to serve the last six months of his sentence in a CCC.[2/]

---

[2/] Fusco is currently serving a term of 33 months of imprisonment, stemming from the United States's District Court, District of Massachusetts September 19, 2003 sentencing procedeing. His judgment was pursuant to a plea agreement, whereby he pled guilty to 18 U.S.C. § 1962(d); 18 U.S.C. § 1956(h).

In this first POINT, we demonstrate that this Court is the appropriate forum to decide Fusco's claims. We also discuss the criteria pursuant to which these claims should be determined.

### A. AVAILABILITY OF RELIEF IN THE SENTENCING COURT

Sentencing courts indisputably have authority to compel the BOP to exercise its authority in accordance with a correct interpretation of its statutory power. See McCarthy v. Doe, 146 F.3d 118 (2d Cir. 1998). Habeas corpus relief under 28 USC § 2255 is available to effectuate this authority. Id.

Habeas relief however, is not the only way. Rather, to enforce a judgment of sentence, a sentencing court may issue any writ which is necessary under 28 USC § 1651, including a declatory judgment, 28 USC § 2201, or an order to a federal agency in the nature of mandamus, 28 USC § 1361. Although it is true that a sentencing court cannot compel the BOP to select any particular designation, see United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995), the court can insist that the BOP's discretion be exercised free from the constraints of legal error. See Koon v. United States, 518 U.S. 81, 100 (1996) (decision maker "by definition abuses its discretion when it makes an error of law").

Petitions filed under 28 USC § 2255 are subject to the Federal Rules of Civil Procedure where no procedure specifically is designated by the Section 2255 Rules. See § 2255 Rule 12 (2003) ("If no procedure is specifically prescribed by these

Rules, the district court may proceed in any lawful manner not inconsistent with these rules ... and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate to motions filed under these rules"). As, in fact, there is no procedure specifically prescribed by the § 2255 Rules for the circumstances that this case presents, resort to the Federal Rules of Civil and Criminal Procedure-including Rule 65 ("Injunction")-is fully warranted in this case.

Indeed, emergency injunctive relief already has been granted against the BOP's New Policy in numerous courts under a variety of theories and procedural devices. As one of these courts noted, "every case, except one, ... that has addressed the legality of the BOP's new policy memorandum has been the same court that imposed the sentence." Combs v. Attorney General of the United States, et al., ___ F.Supp.2d ___, 03 Civ.622 (RBW), 2003 WL 20004209 (D.D.C. April 17, 2003).

For example, some sentencing courts have granted preliminary injunctions or temporary restraining orders against operation of BOP's New Policy. See Ashkenazi v. Attorney General of the U.S., 246 F.Supp.2d 1 (D.D.C. 2003) (granting a preliminary injunction on Administrative Procedure Act grounds) Ferguson v. Ashcroft, 248 F.Supp.2d 547 (M.D.La. 2003) (same).

Other Courts have permanently enjoined BOP from transferring an inmate pursuant to the New Policy. See <u>Cutler</u> v. <u>U.S.</u>, 241 F.Supp.2d 19 (D.D.C. 2003) (equitably estopping the application of BOP's New Policy); <u>U.S.</u> v. <u>West</u>, Civ. No. 02-70239-DT, 2003 WL 1119990 (E.D.Mich. Feb.20, 2003) (same); <u>Pearson</u> v. <u>U.S.</u>, 2003 WL 21262866 (E.D.Wisc. May 19, 2003) (same)

Still another Court granted a motion under Rule 36, Fed.R.Crim.P., on the grounds that the BOP's New Policy "misrepresented the Court's sentence no less than if the Clerk had omitted or mistakenly transcribed some important part of the sentence." <u>U.S.</u> v. <u>Canavan</u>, Crim. No. 00-275 WL 245226 at *1 (D.Minn. Jan.22, 2003).

In yet another case, where a defendant's plea and sentence straddled adoption of the BOP's New Policy, the Court granted a downward departure to obviate the <u>ex post facto</u> consequences thereof. <u>U.S.</u> v. <u>Serpa</u>, 251 F.Supp.2d 988 (D.Mass. 2003). In this case, Smith invokes most of the grounds and procedural devices that already have been invoked in successful challenges to BOP's New Policy.

    B.    ALTHOUGH FUSCO SEEKS A MANDATORY INJUNCTION TO COMPEL A FORM OF 'GOVERNMENTAL ACTION', THE 'SERIOUS QUESTION' STANDARD SHOULD APPLY.

A district court may grant injunctive relief if the moving party establishes: (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping in

Other Courts have permanently enjoined BOP from transferring an inmate pursuant to the New Policy. See <u>Cutler</u> v. <u>U.S.</u>, 241 F.Supp.2d 19 (D.D.C. 2003) (equitably estopping the application of BOP's New Policy); <u>U.S.</u> v. <u>West</u>, Civ. No. 02-70239-DT, 2003 WL 1119990 (E.D.Mich. Feb.20, 2003) (same); <u>Pearson</u> v. <u>U.S.</u>, 2003 WL 21262866 (E.D.Wisc. May 19, 2003) (same)

Still another Court granted a motion under Rule 36, Fed.R. Crim.P. on the grounds that the BOP's New Policy "misrepresented the Court's sentence no less than if the Clerk had omitted or mistakenly transcribed some important part of the sentence." <u>U.S.</u> v. <u>Canavan</u>, Crim. No. 00-275 WL 245226 at *1 (D.Minn. Jan.22, 2003).

In yet another case, where a defendant's plea and sentence straddled adoption of the BOP's New Policy, the Court granted a downward departure to obviate the <u>ex post facto</u> consequences thereof. <u>U.S.</u> v. <u>Serpa</u>, 251 F.Supp.2d 988 (D.Mass. 2003). In this case, Smith invokes most of the grounds and procedural devices that already have been invoked in successful challenges to BOP's New Policy.

> B. ALTHOUGH FUSCO SEEKS A MANDATORY INJUNCTION TO COMPEL A FORM OF 'GOVERNMENTAL ACTION', THE 'SERIOUS QUESTION' STANDARD SHOULD APPLY.

A district court may grant injunctive relief if the moving party establishes: (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping in

favor of the moving party. See Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994); Plaza Health v. Perales, 878 F.2d 577 (2d Cir. 1989).

The issue sometimes becomes more complicated, however, when injunctive relief is sought to compel or restrain governmental action. In fact, the Second Circuit has offered differing views on the standard to be applied in that context. See e.g. Time Warner Cable v. Bloomberg L.P., 118 F.3d 917 (2d Cir. 1997). As the Time Warner Court explained:

> We have sometimes required a strong showing of entitlement to a preliminary injunction against governmental action,.. at least where the injunction stays 'governmental action taken in the public interest pursuant to a statutory ... scheme',...or the injunction might 'adversely affect the public interest in a manner which cannot be compensated for by an injunction bond,'...Judge Friendly expressed the view that the 'serious question/balance of hardships' test is not applicable where an injunction is sought against a sovereign... On the other hand, we have always followed merely because a movant seeks to enjoin government action. Haitain Centers v. Mcnary, 969 F.2d 1326, 1339 (2d Cir. 1999), and we have applied the lesser standard in suits against governmental entitles, e.g., Hudson River Sloop v, Dept. of Navy, 836 F.2d 760 (2d Cir. 1988).

Here, as in Haitian Centers, defendants hardly have an exclusive claim on the "public interest". Quite the contrary, Smith's claims include a challenge that BOP's New Policy is violative of the Administrative Procedure Act. This challenge is not to the adjudication of Fusco's individual case, but rather, to agency rule making that is violative of every pending--and, indeed, future--inmate designation decision of the BOP. See, Ferguson, 248 F.Supp.2d 546 (enjoining application of the BOP's New Policy as violative of the notice and comment requirements of

§ 553 of the APA, and noting that "the challenge is not [to] an adjudication of an individual case, but instead, a challenge to a rule making").

The judiciary likewise has a vitally important stake in the resolution of the issues raised in this proceeding, a point recently and forcefully made by the court in Iacaboni v. U.S., 251 F.Supp.2d 1015, 1018 (D.Mass. 2003):

> It is no exaggeration to say that the December communications reflected a disregard for-indeed, almost an insult to-the courts. The affront was particularly grave to judges who had imposed sentences in reliance on the then prevailing sentencing regime. A sentencing option of longstanding acceptance, clearly supported by statute and repeatedly reflected in the practice of hundreds of judges was abruptly snatched away without opportunity for comment by judges or the Sentencing Commission, and without even prior notice-based upon the transparently specious rationale that the old policy was "unlawful". The lack of respect for the proper role of the judiciary, the plain discourtesy in the brusque manner of notification, and particularly the subversion of the sentencing process by the insistence on a retroactive application of the new sentencing process by the insistence on a retroactive application of the new sentencing rules, all were highly offensive and gratuitous. Even if the BOP's about-face on community corrections could somehow be justified- and it cannot-it should never have been carried out in the cavalier manner it was.

See also Id. at 1022 ("No judicial responsibility is more serious than sentencing. This difficult work cannot be done with any integrity when the judge is actively misled by false information")

Finally, and as the Iacaboni court further noted, the BOP's policy reversal also has a real and measurable impact on "innocent third parties" Id. This is so because

8

> particularly [for] children, the economic and emotional devastation caused by a parent's distant incarceration can be, to some extent, palliated. With the inmate employed, families can stay off welfare, with a parent available children can avid placement in foster care. For the Government wishing to recognize substantial assistance provided by a cooperating defendant with this option holds out advantages during plea negotiations, and at sentencing Finally of course, perhaps the Number One beneficiary of community corrections is the American Taxpayers, since the cost of Community Confinement, when it serves the interest of justice, is far less than the price tag for more conventional term of incarceration.

Id. at 1022-23. Ashkenazi, 246 F.Supp.2d at 10. (enjoining BOP from rescinding prisoner's CCC designation on grounds that the new policy violates the Ex Post Facto Clause, and noting that "an injunction will further public interest [as] the public certainly has an interest in ensuring that retroactive laws are constitutional.")

For these and the additonal reasons below, the "serious questions" standard should be applied in the second prong o of the test for injunctive relief. Whether the lower "serious questions" standard is applied, however, is by no means dispositive of the instant application since, as set forth infra, Fusco also easily meets the heightened "likelihood of success on

---

3/

　　　Fusco is currently within the pre-release program offered at FCI Raybrook, in anticipation of his release. He has secured employment, which is verified through the BOP's FCI Raybrook's Unit Team (Niagra A); however, the very purpose of CCC placement is to assist the inmate in making the transition from prison to Society, and as such, Fusco seeks CCC placement in order to full acclimate himself with Society prior to his release date.

the merits" standard as well.

## POINT II
### FUSCO IS ENTITLED TO AN ORDER COMPELLING THE BOP TO: (1) DISREGARD ITS INVALID NEW POLICY; AND (2) RECONSIDERATION UTILIZING PRE-DECEMBER 20, 2002, CRITERIA, HIS ELIGIBILITY FOR PRE-RELEASE DESIGNATION TO A CCC.

Having established that this Court has the authority to compel the BOP to lawfully exercise its discretion and that the "serious questions" standard should be applied to Fusco's claim for injunctive relief (POINT I), supra, we now turn to the central issue on this motion: Whether Fusco is entitled to an Order compelling the defendant's to (1) disregard the BOP's New Policy, and instead, (II) exercise their discretion and immediately consider Smith's eligibility for pre-release designation to a CCC.

A. SMITH AND HIS FAMILY WILL SUFFER IRREPERABLE INJURY IF HE IS NOT DEEMED ELIGIBLE TO BE TRANSFERED TO A CCC UNTIL

Fundamental to the granting injunctive relief is the showing of irreparable harm. Polymer, 37 F.3d at 77-78; Plaza Health Laboratories, 878 F.2d at 580.

Irreperable harm is sometimes presumed when the movant alleges an abridgment of his civil rights. See Able v. U.S., 847 F.Supp. 1038, 1043 (EDNY 1994) ("A showing of a possible violation of constitutional rights constitutes irreperable harm justifying a preliminary injunction")..

Here, Fusco has alleged that the BOP's New Policy violates his rights under the Ex Post Facto Clause of the United States Constitition. As a result, it can be concluded that the nature of Fusco's allegations, standing alone, satisfy the first prong of

the test for obtaining injunctive relief.

In this case, Fusco was originally sentenced by this Court to a term of 33 months on September 19, 2003 in the District of Massachusetts. He was sentenced to this term, plus three years of supervised release, as a result of a plea agreement as to two Counts of a Superceding Indictment; to, in Count I, 18 U.S.C. § 1962(d); and in Count II, 18 U.S.C. § 1956(h).

At the time of his arrest, Fusco was steadily employed, and while out on Pre-Sentence Release, he abided by all of the conditions imposed upon him by this Court and Pre-Trial Services.

Fusco is married, and has children that are currently being supported by his wife and family, and the small amount of savings stemming from his employment, prior to his incarceration. Fusco's family situation is stable at the moment, however, this term of incarceration has had serious consequences for his children.

B. THERE IS A SUBSTANTIAL LIKELIHOOD THAT FUSCO WILL PREVAIL ON THE MERITS OF ONE OR MORE OF HIS CLAIMS HEREIN.

The second prong of the required showing for injunctive relief is that there exists either (1) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to make them fair ground for litigation. Polymer, 37 F.3d 77.

---

4/      Fusco raises three alternative grounds for relief in the Complaint, and accompanying Petition for Habeas Corpus. One of which, is that this Court has the authority to adjust Fusco's sentence to reflect a projected 6 months CCC placement, rather than the BOP's 10% recommendation. This may be done through Rule 36, Fed.R.Crim.P..

11

. THE ADMINISTRATIVE PROCEDURE ACT CLAIM

Fusco's first cause of action alleges that the BOP's New Policy was promulgated without providing public notice and opportunity for comment, as required under the Administrative Procedure Acr § 551, et seq. (APA). The APA's notice and comment procedures (5 USC § 553) apply whenever a federal agency adopts a new rule, or when it adopts a new position inconsistent with any of the [agencys] existing regulations. See Shalala b. Guernsey Mem'l Hosp., 514 U.S. 87, 100 (1995), accord, Byrd v. Moore, 252 F.Supp.2d 293, 303 (W.D.No. Carolina, 2003) (citing Ferguson, 248 F.Supp.2d 547). Thus, in order to establish a violation of the APA, it must be shown that a new agency rule has been promulgated or that a radically new interpretation of a rule has been adopted without public notice and opportunity for comment.

Since the BOP announced the New Policy, numerous courts have granted habeas relief on the grounds that it had been promulgated in violation of the APA. See Byrd, 252 F.Supp.2d at 302; Iacoboni, 251 F.Supp.2d 1038; Tipton, 2003 WL 21196487 (D.Md. May 15, 2003); Howard, 248 F.Supp.2d 518; Ferguson, 248 F.Supp.2d 547; and Mallory, No. Civ. 03-10220-DPW, 2003 WL 1563764 (D.Mass. March 25, 2003).

In Mallory, the court granted § 2255 relief on the grounds that the BOP's New Policy was promulgated in violation of the notice and comment provisions of the APA.

2. Ex Post Facto Claim

The Ex Post Facto Clause provides that "no State shall ... pass any ... ex post facto law". U.S. Const. Art. I, § 10. To fall within the ex post facto prohibition, a law must be made retrospective-that is, it must apply to events occurring before its enactment, and it must have the disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime. Lynce v. Mathis, 519 U.S. 443 (1997) (citations omitted); See also Weaver v. Graham, 450 U.S. 24 (1981) (same). In both cases, the Court considered statutory changes strikingly similar to the New Policy, and in both cases, held that the changes violated the Ex Post Facto Clause.

In Ashkenazi, for example, the Court observed that the "Supreme Court has twice concluded that comparable changes in the two state statutes .... constituted violations of the Ex Post Facto Clause. 246 F.Supp.2d at 5 (citing both Lynce and Weaver), and concluded that those two cases strongly supported the plaintiff's Ex Post Facto challenge to the BOP's New Policy in that case.

Here, as in Lynce, and Weaver, and their progeny, the Ex Post Facto Clause is implicated because a factor affecting Smith's prison term has changed, and that factor was significant in his decision to accept to 15 month term for the violation. Smith accepted the plea without the understanding that he would not be eligible to serve no more than 10%, in that while Smith

13

served his original term, it was certainly standard practice tpo for an inmate to serve no less than 6 months within a CCC

C THE BALANCE OF THE EQUITIES FAVORS FUSCO

Should this Court find that Fusco has established a likelihood of success on the merits, it need not consider whether the balance of equities tips in his favor. See Caufield, 583 F.2d 605 (2d Cir. 1978); see also Jackson v. Johnson, 962 F.Supp.2d 391 (SDNY 1997).

The facts in this case,, closely parallel to an extent those in Ashkenazi, and Cioffoletti. First, like Aschkenazi, Fusco and his family will suffer self evident harm if he is forced to serve the entire 33 months, less the 35 days the BOP is now willing to grant him in a CCC.

### III   ALTERNATIVE RELIEF

Section 2241 of Title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute. See Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923; Ralston v. Robinson, 454 U.S. 201, 102 S.Ct. 233. Several petitions challenging the BOP's New Policy have also sought relief. See Monohan v. Winn, 276 F.Supp.2d 196 (D.Mass. 2003); Benton v. Ashcroft, 273 F.Supp.2d 1139 (S.D.Cal. 2003); Ferguson v. Ashcroft, 248 F.Supp.2d 547 (M.D.La. 2003).

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Administrative remedies must ordinarily be exhausted before the filing of a habeas petition pursuant to 28 USC § 2241. Smith has not pursued Administrative Remedy relief before filing in this Court.

Failure to exhaust may be excused when any of the following circumstances apply: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile, and (4) in certain circumstances, when a appeal plaintiff has raised a substantial constitutional question. Guittard, 967 F.2d 737 (2d Cir. 1991) (citing Von Hoffburg, 615 F.2d 633 (5th Cir. 1988); and cases cited therein. In any event, the exhaustion requirement for filing a § 2241 is prudential rather than statutory, unlike habeas corpus petitions filed pursuant to § 2254, or § 2555. See, Arrango, 346 F.3d 892 (9th Cir. 2003). Therefore, Fusco's failure to exhaust may be excused at the Court's discretion. Fusco seeks to excuse his failure to exhaust by pointing out that the BOP will not reverse it's own New Policy.

The December 20, 2002 Memo, was authored by the BOP's General Counsel, and as found by the Court, in Zucker v. Menifee, 2004 U.S.Dist.LEXIS 724 (January 21, 2004), "Because this Court agrees that exhaustion of administrative remedies would be futile, given the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case, [Zuckers] failure to exhaust is excused.

Conclusion

For the reasons set forth within, the petitioner prays for an Order granting relief in all respects and for such other and further relief as is just and equitable.

Respectfully,

Dated;

*Emilio Fusco* (signature)
Emilio Fusco
02689-748

```
RBKM8    540*23  *           SENTENCE MONITORING                           FILED 04-26-2005
PAGE 001          *             COMPUTATION DATA                                  12:31:34
                               AS OF 04-26-2005
                                                                        2005 MAY -9 P 2: 19

REGNO..: 02689-748 NAME: FUSCO, EMILIO                                   U.S. DISTRICT COURT
                                                                             DIST. OF MASS

FBI NO............: 971062PB4             DATE OF BIRTH: 10-09-1968
ARS1..............: RBK/A-DES
UNIT..............: NIA                   QUARTERS.....: N01-103L
DETAINERS.........: NO                    NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 02-09-2006

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  05-08-2006 VIA GCT REL

-----------------------CURRENT JUDGMENT/WARRANT NO: 010 -------------------------


COURT OF JURISDICTION............: MASSACHUSETTS
DOCKET NUMBER....................: 3: 03 30036 002
JUDGE............................: PONSOR
DATE SENTENCED/PROBATION IMPOSED: 09-19-2003
DATE COMMITTED...................: 11-28-2003
HOW COMMITTED....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED................: NO

                  FELONY ASSESS   MISDMNR ASSESS    FINES           COSTS
NON-COMMITTED.:   $200.00         $00.00            $20,000.00      $00.00

RESTITUTION...:  PROPERTY:  NO    SERVICES:  NO          AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 ----------------------------

OFFENSE CODE....:  545
OFF/CHG: 18:1962(D)- CONPIRACY TO PARTICIPATE IN AFFAIRS OF ENTERPRISE
         THROUGH RACKETEERING 18:1956(H)- CONSP TO LAUNDER MONEY

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:     33 MONTHS
  TERM OF SUPERVISION............:      3 YEARS
  DATE OF OFFENSE................: 07-31-2000




G0002         MORE PAGES TO FOLLOW . . .
```

```
   RBKM8   540*23 *           SENTENCE MONITORING            *    04-26-2005
PAGE 002 OF 002 *              COMPUTATION DATA              *     12:31:34
                              AS OF 04-26-2005

REGNO..: 02689-748 NAME: FUSCO, EMILIO


------------------------CURRENT COMPUTATION NO: 010 --------------------------


COMPUTATION 010 WAS LAST UPDATED ON 11-05-2004 AT FTD AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 11-28-2003
TOTAL TERM IN EFFECT............:     33 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:      2 YEARS        9 MONTHS
EARLIEST DATE OF OFFENSE........: 07-31-2000

JAIL CREDIT.....................:     FROM DATE       THRU DATE
                                      12-15-2000      12-20-2000

TOTAL PRIOR CREDIT TIME.........: 6
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 105
TOTAL GCT EARNED................: 27
STATUTORY RELEASE DATE PROJECTED: 05-08-2006
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 08-21-2006


PROJECTED SATISFACTION DATE.....: 05-08-2006
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: VOLUNTARILY SURRENDERED TO FCI FORT DIX,NJ ON 11-28-2003(NLR)




G0000           TRANSACTION SUCCESSFULLY COMPLETED
```

```
RBKM8    542*22 *              SENTENCE MONITORING              *      04-26-2005
PAGE 001 OF 001 *                GOOD TIME DATA                 *        12:31:44
                              AS OF   04-26-2005

REGNO...: 02689-748     NAME: FUSCO, EMILIO
ARS 1...: RBK A-DES                                    PLRA
COMPUTATION NUMBER..: 010                   FUNC..: PRT    ACT DT:
LAST UPDATED:  DATE.: 11-05-2004            FACL..: FTD      CALC: AUTOMATIC
UNIT................: NIA                   QUARTERS............: N01-103L
DATE COMP BEGINS....: 11-28-2003            COMP STATUS.........: COMPLETE
TOTAL JAIL CREDIT...: 6                     TOTAL INOP TIME.....: 0
CURRENT REL DT......: 07-25-2006 TUE        EXPIRES FULL TERM DT: 08-21-2006
PROJ SATISFACT DT...: 05-08-2006 MON        PROJ SATISF METHOD..: GCT REL
ACTUAL SATISFACT DT.:                       ACTUAL SATISF METHOD:
DAYS REMAINING......:                       FINAL PUBLC LAW DAYS:

----------------------------GOOD CONDUCT TIME AMOUNTS---------------------------

    START       STOP      MAX POSSIBLE TO    ACTUAL TOTALS   VESTED    VESTED
    DATE        DATE      DIS     FFT        DIS     FFT     AMOUNT     DATE
  11-22-2003  11-21-2004   54      27         27
  11-22-2004  11-21-2005   54
  11-22-2005  05-08-2006   24

       TOTAL EARNED AMOUNT..........................................:     27
       TOTAL EARNED AND PROJECTED AMOUNT............................:    105




G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```